Case number 23-1903 Richard Wershe Jr. v. United States of America. Argument is not to exceed 15 minutes per side. Mr. Aiyad again for the appellant. That's the one we just finished. There were two separate Wershe cases. Okay. But we just argued both of them. Yeah, I mean they did argue both but... So was that considered one argument for both cases? Well, no. We'll let them argue the other case. I'm just going to basically just continue off what I initially prepared to argue. They are pretty much the same, same line arguments. And the only reason we brought the United States of America because we had filed a motion to amend, the court was not ruling on it. As your honors know, this case has been transferred to three different federal judges before the ruling was on it. As that time was passing... I'm not understanding what you're saying. Okay. Maybe you could talk just a wee bit louder. Yeah, okay. I'm sorry. The reason why we brought the second case against the United States of America is because we had filed a motion to amend and to add the United States of America because we received back from the FTCA under the federal mandates that we have to first file a claim with the FTCA with the departments, which we did. Once we received that denial, then we had I want to file a lawsuit there to move to motion to amend the lower court. There was no decision on that and the statute was running, so we went ahead and filed a complaint against the United States of America to preserve our statute limitations for that particular cause of action for the FTCA. So that's why we brought a second suit to bring that in. But the judge, the lower court, did rule basically one ruling as to both cases as to that. So that's... One thing that I haven't understood from the beginning about your theory of suing the is that you seem to think because you exhausted your remedies under the Federal Tort Claims Act, therefore you sue the government directly. As I understand the Westfall Act, which is what sets all of this up, what happens is if you sue an official and you claim... If the facts show that they are acting as a federal official, that has to be a certification by the Attorney General. Then automatically the United States is substituted for that individual. That's a much different proposition than just saying, oh well I exhausted against the individual so now I can sue directly the United States. So what am I missing here? Well no, what we're missing is that we had to still bring the United States and the USA in because otherwise if they move to... And actually it's the Attorney General's that basically would substitute for that, Your Honor. Did the Attorney General here certify that anybody was acting in a federal capacity based on the allegations in your lawsuit? No, Your Honor. At the time, no. But from our previous case, we've always also argued the Black Lives Matter case was this appeals court reversed the Chief Judge on the issue of this issue actually. And we felt that was more so the Detroit defendants who we believed were deputized as federal agents at the particular time. And if they're deputized as federal agents, they would also fall under the United States of America substituting for them. We couldn't do it. We wanted to. We told opposing... The United States has not come along and taken an affirmative action to substitute, have they? But they have in all our previous cases, but they normally would. But they felt there was a pending motion to dismiss so they didn't need to do it at that time. I think if it moved forward, there would have... Have they substituted or haven't they? No, Your Honor. I think the issue, because there was a pending motion to dismiss. That's why, Your Honor. You know, that's why they didn't substitute at that time. But again, as long as applied, they would, I would believe, and you can ask, but would most likely substitute for all defendants, I would feel, because also we believe that also the Detroit police officers were working with the federal agents as well to be deputized in that level, which we've seen before. But they would step in for all defendants. So for us to get this right, the way we write an opinion, we have to assume that you've properly named the United States directly and short-circuited all the Westfall Act requirements, right? Well, yeah, that we named the United States, yes, because eventually, again, the United States will substitute for the individual defendants. You want us to assume that all of these things that you say would have happened had there not been a motion to dismiss. We're supposed to assume all those things would happen. Well, not only assume, Your Honor. Really, we have to hear from the government. Well, yeah, but I think the law dictates that. It's not just an assumption, Your Honor. I think the law dictates that after you say the United States steps in, ask for the defendants who are acting within their conduct, Your Honor. Okay, thank you. Yes. We also had where we felt another one, another number of mistakes that the lower court made, Your Honor, was that she didn't hold any evidentiary hearing or leave the issue for trial as a within the statute of limitations. She didn't allow that. There will be attached case law that says she should do that under Doe v. United States, Second Circuit 2023, as well as other cases in Clark v. Hanley, and that the credibility determinations... Are there any Sixth Circuit cases that say that she was required to either submit this to the jury or have an evidentiary hearing on these issues that you're raising? Well, Your Honor, if it's issues of effect and credibility issues... Simple question. Do you have any Sixth Circuit cases? But you said on these issues, Your Honor. The issue basically as to the issue, I think the issue of credibility, whether this person's saying the truth, that he actually had a fear of retaliation, I think is an issue that needs to be... She said a minute ago that she erred because she did not hold an evidentiary hearing, and she didn't reserve these questions, credibility was one, for a jury. All I'm asking you is, you alluded to a Second Circuit case when you were going real fast a minute ago. Yes, Your Honor. Do you have any Sixth Circuit cases that support what you're saying? I have, Your Honor, a Supreme Court case, Anderson v. Liberty Lobby, 1986 case, where it says credibility determinations, whether this person basically... And weighing the evidence and drawing the legitimate inference from the facts are jury functions, not those of a judge. In connection with the defense of equitable tolling, with a claim of equitable tolling? I don't believe there was an equitable tolling case, Your Honor. And the answer to my question, because you answered with a Supreme Court case, and I asked you specifically twice, if you had any Sixth Circuit cases, and you answered with a Supreme Court case, so the answer must be... Well, there is a Sixth Circuit case, again, as to regard to prisoner fear of retaliation, that's Gilmore v. Ormond, Your Honor. That's a Sixth Circuit, October 4, 2019. Does that deal with submitting something to a jury or deal with the question of an evidentiary hearing? I think that's dealing with the use of a jury, Your Honor. Okay, thank you. But again, it's the same. I just think this is an issue that a jury is best to decide as to whether this person actually had a fear of retaliation or not. They're not really an issue for the judge to decide. And again, Your Honor, the judge was to take our pleadings as true, and I don't think she did that. She placed it at quite a different standard. We had a number of attachments on the response to the motion to dismiss, which she would consider, for instance, the three lawsuits that were brought in the past for going to the idea of Mr. Wershe had a fear of retaliation. Again, that was not what those lawsuits stood for. They used to say all they stood for was a person trying to get out of jail at that particular time. She applied the standard as that's already been a judicial notice of it, which we feel is also improper, Your Honor. She didn't consider the three affidavits that were attached. She indicated, quote, plaintiff has not provided any evidence that he discussed his fear of retaliation with his attorneys. The affidavits attached exactly say the opposite. They did address the fear of retaliation with his attorneys. And quote, he says, I shared with Ralph my desire to take legal action. Ralph told me, and Ralph is his attorney, there was a high chance that they would retaliate and make sure I stayed in prison forever, just like Bufalino, his other attorney. This is Wershe's affidavit at one. I also heard at least twice his attorney, Merrill Ralph, tell him not to bring a lawsuit while he was in prison and risk retaliation. This is his fiancee's affidavit. Then the attorney's spouse, his widow, said, quote, my husband represented Mr. Richard Wershe. He and I often discussed the case. It has always been my understanding that Mr. Wershe would not take any legal action until he was out of prison, or else they would retaliate against him and he would never get out of prison. And then the court went on and said that plaintiff Wershe has never really, never suggested that he was unaware of the required deadlines or timing requirements, despite the two affidavits that say to the contrary. The district court erred again when it considered facts outside of the pleadings as presented by defendant's appellees, but refused to consider facts outside of the pleadings as presented by appellants. Despite the district court's statements that would disregard evidence outside of the pleadings, it considered the three external cases presented as I just indicated. When a case is presented with a 12B6 motion, it may consider public records so long as they are referred to and the complaints are censored for claims of their end. We've done that. Lastly, the district court recognized the complicated and unique nature of plaintiff's circumstances and made special notation that defendant's motion to dismiss are granted insofar as plaintiff's claims are barred by the statute of notations, but it's an opinion should not take as a ruling on the merits of any of the other substantive claims. The plaintiff deserves an adjudication on his merits. He holds a record for the longest serving nonviolent prison incarcerated as a juvenile. His sentence, that of juvenile with his life without parole, was found unconstitutional by the United States Supreme Court, and only then was he given the opportunity of parole, which he was supported by, we feel, corrupt law enforcement retaliating against him. In any case, warrants the ratification of the doctrine of the statute. Thank you, Your Honor. Good morning, Your Honors. I'll be brief and I'll start by addressing the court's concerns about the procedural aspect of this case. In a Westfall Act case, if he had named an individual employee, we are allowed to substitute in if that employee is working within the scope of their employment for tort cases, and that's an important distinction that I want to make because counsel keeps suggesting that the United States is going to substitute in. That process has already happened. He directly sued the United States. The employees for which he, whose actions he complains about, were working within the scope of their employment, so all of that is proper. His other case, the Bivens case, we cannot substitute in, and that's the distinction that he's missing. Those, in the Bivens case, he's alleging constitutional claims, and under FDIC v. Myers, you can't have a for his Bivens claims. So we're all good on exhaustion in terms of the process. It's the timeliness that's the issue, and to get into the equitable tolling piece, and again I'll be brief. I know you've heard plenty of argument today about it, but Richard Wershe's failure to timely file an administrative claim as required by 28 U.S.C. 2401b did not unavoidably arise from circumstances beyond his control, and he's not entitled to equitable tolling. According to Wershe, he knew for decades that he wanted to sue federal agents, but he waited 30 years to file an administrative claim. The reasons for his extreme delay are an alleged fear of retaliation and reliance on his attorney's incorrect advice, but Wershe fails to set forth allegations to support his conclusions that his fear of retaliation is reasonable, or that his attorney's advice rises above the level of garden variety excusable neglect. The district court properly dismissed his because he failed to meet his burden to establish that he's entitled to equitable tolling, and this court should affirm. Under Zappone, in an FTCA case, in deciding whether equitable tolling applies, the court can consider both the five-factor test and the streamlined two-factor test applied in Holland v. Florida. Under the five-factor test, factors 1, 2, 4, and 5 all weigh against equitable tolling because under Lundy and Weigel, knowledge of the FTCA statute of limitations is imputed to Wershe, and it's beyond debate that there is prejudice to the United States if it is forced to litigate claims that are 30-plus years old. The remaining factor is diligence. Wershe cannot establish that he was diligent for the 30 years that he seeks equitable tolling. The only thing that Wershe alleges he did to pursue his claims is have a few conversations with two of his several attorneys. He doesn't allege when those conversations occurred or how often, and merely having a conversation with an attorney does not establish diligence as this court held in Lundy and Taylor. Further, the advice that Wershe claims he received should have prompted him with any amount of reasonable diligence to investigate further because the advice he claims he received did not make any sense. According to Wershe, Mr. Bufalino told him at the time of his conviction that he should wait and file his claims after his release, but Wershe was sentenced to life in prison without parole. Bufalino's advice meant he would never get to bring his claims. Likewise, Wershe alleges that Mr. Musilli told him he should wait and file his claims after release, but at that time he was still serving a life sentence and he'd been denied parole. The fact that the advice he claims he relied on made no sense and meant that he may never bring his claims should have caused him to investigate further. He could have talked to other attorneys. He could have done basic research, which many other litigants have done, but Wershe did nothing. He also did nothing to assuage his alleged fear of retaliation. In the Davis case that he asked this court to adopt, and as already pointed out, the government has not stipulated that that is the law, nor could we. As counsel said, we have assumed that if this court were to apply that standard, Wershe is still not entitled to equitable tolling. Nonetheless, in that standard, the court held that even if you have a reasonable fear of retaliation, diligence requires you to do something about it. Wershe did nothing. If he was concerned about retaliation from AUSAs, FBI agents, or the Detroit police, he could have gone to the U.S. Attorney, the Department of Justice, the governor, his congressperson. There's any number of avenues that Wershe could have pursued if he was afraid he would be retaliated against for filing tort claims. But again, he did nothing. Wershe was anything but diligent for the 30 years that he seeks equitable tolling. And because of that, he's not entitled to equitable tolling under the five-factor test, and he's also not entitled to equitable tolling under the two-factor test applied in Holland that he argues for. Under that analysis, Wershe has the burden to establish both that he was diligent in pursuing his rights, and that there were extraordinary circumstances beyond his control that prevented timely filing. As just discussed, Wershe can't establish that he was diligent in pursuing his claims. But even if he was, he also cannot establish extraordinary circumstances. Wershe's alleged fear of retaliation was not reasonable and cannot create an extraordinary circumstance in this case. As this court pointed out, he lumps together a series of events, and those series of events were not retaliatory actions. Wershe doesn't claim that the assassination attempts and framing him as a drug dealer were done to prevent him from filing a civil lawsuit against federal agents. He claims that there was a politically motivated campaign against him in the city of Detroit to either have him killed or put in jail, apparently because of information he had about local politicians and their associates. It had nothing to do with whether he filed a civil claim against federal agents. The Clark v. Hanley case from the Second Circuit, while not binding, is instructive here. In Clark, the plaintiff there sought equitable tolling to bring a 1983 claim that was several years untimely. She attributed her delay to her mental condition, a prior sexual assault in the prison, and an alleged fear of retaliation based on insults and belittling from corrections officers. But the court declined to find extraordinary circumstances, pointing out that although the plaintiff had identified some traumatic experiences she'd endured, she failed to point out any overt threat of retaliation from any relevant actor. And that's exactly what's missing in this case. In this case, Wershey sets forth a tumultuous history with the criminal justice system. But he doesn't allege that anyone ever threatened to retaliate against him if he filed a civil lawsuit. Quite the contrary. It's clear from the public record, and Wershey doesn't dispute, that he filed a number of lawsuits during the time he was incarcerated, many of which contain the same allegations that he makes here. Wershey also says that he participated in the creation of the 2017 documentary White Boy, which contains all of the allegations made in this case. But he doesn't allege that revealing those allegations resulted in any retaliation or threats to keep him from filing a civil lawsuit. Wershey's generalized distrust of the criminal justice system does not establish a reasonable fear of retaliation if he had filed a tort claim against federal agents. And to the court's point about advice, Wershey also cannot establish extraordinary circumstances based on his attorney's advice. Accepting Wershey's allegations as true, two of his attorneys told him that he had up to a year after release to file his claims. Their mistaken belief is the kind of garden variety excusable neglect that does not support equitable tolling under the Sixth Circuit's precedence. Further, in Florence v. Florida, the Supreme Court held that the mistaken belief that the habeas deadline was tolled while the petitioner sought cert from the Supreme Court for a state court ruling did not support equitable tolling. In Menomee Indian Tribe, the Supreme Court held that the mistaken belief that the party did not have to present his claim under the Contract Dispute Act did not warrant equitable tolling. And this court held in Graham-Humphrey simply that ignorance of the law does not support equitable tolling. And that is all that Wershey alleges here. He doesn't claim, as in Holland or in other cases, that he did research that he presented to his attorneys to show them they were wrong and they ignored it. He doesn't allege that he told them to file an administrative claim and they failed to do so. He doesn't allege that he was abandoned by his counsel. All he alleges is that his attorneys gave him incorrect advice about a filing deadline. That is garden variety excusable neglect that does not warrant equitable tolling. Because Wershey failed to meet his burden to show he's entitled to equitable tolling, this court should affirm the district court's dismissal of his claims as untimely. If the court has no questions, I'm all set. Thank you. Thank you. Since the counsel is correct that they don't substitute for the Bivens, but our understanding is that they defend the Bivens defendants, so it's pretty much almost the same, that they would defend them when they step in. The extraordinary circumstances... But on that, they're already defending them in the other action, right? I don't think they stepped in to defend them in the other action. I can't hear you. I don't think they stepped in to. Yes, they're defending, not the United States, no. The United States did not defend them in the other action. All right, thank you. And again, the ruling for extraordinary circumstances, the holding is that either by the defendants or someone they have influence. And we are addressing the issue of influence that these defendants had over a number, over defendants. And I just, again, I just want to put for the record, I think I've listed all of these, but I want to, again, highlight to the court that this is a 15-year-old working for Detroit Federal Law Enforcement. Plaintiff was shot and nearly killed by an agent of Mayor Coleman A. Young's nephew-in-law, John Curry, and law enforcement acted with impunity to keep plaintiff in their control. There was another two assassination attempts on Mr. Wershe as well. Convicted Detroit hitman Nate Boonecraft admitted accepting payments for top Detroit law enforcement Gil Hill to kill plaintiff. Indeed, plaintiff nearly escaped his own murder with Boone pulled up alongside his friend's car and attempted to shoot him, with plaintiff being saved by his friend speeding away. Plaintiff's conviction was the result of falsified evidence planted under a porch and attributed to him. Upon his arrest, he was still a minor. Plaintiff was beaten so brutally by law enforcement that he had to be hospitalized. Plaintiff's first day in prison, he witnessed a fellow inmate get hit and attempted retaliatory murder by being stabbed in the neck, to which the prison guard made the threatening comment, get ready Wershe, this is what happens every day here. After plaintiff was approached by the FBI to use him for information and connections as part of Operation Backbone to discover police corruption, former Detroit Mayor Coleman Young attempted to reveal his cooperation and endangered plaintiff's life by calling him a stool pigeon, slang for a police informant or snitch. In approximately 1991, federal law enforcement had already made plaintiff aware that based on what he knew about law enforcement he had worked with could endanger his life and required his being placed in the Prison Awareness Protection Program, relocated and given a fake identification for 15 years until 2005. Plaintiff's former attorneys each instructed plaintiff not to sue defendants for the stated reason that he could kill him or ruin his chances of ever being released from prison. Nine, when plaintiff was finally eligible for parole, corrupt law enforcement took direct action against him by releasing to plaintiff's parole board plaintiff's sealed grand jury testimony using his conviction on multiple murderous Detroit gangsters, which plaintiff had only given based on law enforcement's promise that it would always remain sealed so as to never endanger his life, once again increasing the knowledge among the general public that he cooperated with law enforcement. Ten, former head of Detroit's police homicide unit William Royce testified that he was ordered by his superiors in the city of Detroit to falsely testify against plaintiff at his parole hearing. Eleven, plaintiff's own former attorney as criminal trial Edward Gardner drafted and signed a letter from the Wayne County Prosecutor's Office emphatically arguing that plaintiff must never be released. Twelve, defendant Lynn Helen explicitly told plaintiff that he was unlawfully reneging on his agreement with the plaintiff to aid his parole because his superiors wanted plaintiff to remain incarcerated. Thirteen, plaintiff was indicted on trumped-up charges in Florida of running an auto theft ring from prison and members of the Detroit law enforcement community contacted prosecutors in Florida to request that they do everything in their power to convict plaintiff. Fourteen, plaintiff was unconstitutionally and horrifically placed in solitary confinement for 15 months to elicit confession regarding the Florida charges. In the end, plaintiff took a plea deal when Florida prosecutors threatened to charge his mother and his sister. Again, based on all the above, the district court recognized that plaintiff had a genuine fear. Plaintiff demonstrated, quote, plaintiff demonstrated he had substantial, subjectively feared retaliation by defendants and other individuals in the Detroit law enforcement department. The district court should not have required plaintiff to plead a specific threatening statements made by each defendant as argued earlier. She applied equitable stoppel as opposed to equitable totem. I have nothing further. All right, thank you. The case is submitted. Thank you both for your arguments.